May it please the Court, my name is John Ayala, I'm the attorney for Petitioner Margarita Hernandez de Anderson. Your Honor, basically Ms. Hernandez has been a legal resident since 1973. In 1995, she applied for citizenship, filed what's called an N-400 application. When she applied, she truthfully disclosed her conviction, which occurred in 1981, which was basically stemming from an imperfect self-defense situation in which she was a battered woman who was forced to do unspeakable things. However, she committed an act in which she was convicted by jury trial of attempted voluntary manslaughter and discharge of a firearm. In our lower proceedings, we try to present the documents which speak objectively as to what in fact happened. The Court of Appeals, which reviewed the conviction, went in great detail to talk about the circumstances of the abuse that this woman suffered. In 1995, she applied. At the time, she was not placed in deportation, at that point they were called deportation proceedings. Her application, she was interviewed at least three times before 1996, and subsequently she was denied naturalization in the year 2000, and she was placed in removal proceedings. The basis of her denial of citizenship application was not necessarily the crime, but the fact that she was in removal proceedings. What the government did was they issued a notice to appear, saying you are deportable, and used that as a basis to initiate removal proceedings. What that in fact did was place her in removal proceedings, and she continued her citizenship application because she filed for a notice of rehearing. At the time we appeared before the immigration judge, we cited to a section in ACFR that's been recodified to section 12. Let me ask you this. If the government had not initiated removal proceedings, and thereby sort of short-circuited the ongoing naturalization proceeding, and if she had fully disclosed as part of her naturalization proceeding, as it appears that she did, her prior conviction, even though she was removable without the actual institution of removal proceedings, would she have been naturalized? She was statutorily eligible, Your Honor, because she met the prima facie requirements under ACFR 316.2. She was over 18 years of age. She was a legal permanent resident for more than five years. She also had established a period of good moral character during the five-year statutory period, and she was not statutorily barred from establishing good moral character because her offense, even though it was a serious offense, occurred before November 29, 1990. So the only thing that made her ineligible for naturalization was the pendency of the removal proceeding? That's what made her ineligible. And then when we filed the rehearing and we presented that, they then came back and said, well, we heard your rehearing argument, but she is not eligible for naturalization because there are pending and ongoing removal proceedings at this time. How long was it between the time she first applies for naturalization and the passage of the statute that makes her potentially removable? She applied in August of 1995, and the statute was IRIRA, which was written in September 30, 1996. It was a year and a month later, and it was implemented on April 1, 1997. So as of April 1, 1997, the law pretty much came into effect. But basically... Was it in some way, could it have been anticipated at the time that she applied for naturalization that IRIRA would be passed in roughly the form that it was? Absolutely not. There was no signals of Congress. Basically, the first restrictive immigration legislation that came out was ADEPA, and that came out on April 24, 1996. At the time that she applied, if you read the statute and even in the N-400 application, she was statutorily eligible to apply for naturalization. Well, she still is, except for the pendency of the removal. Correct. And that's what we tried to do. And we went to court, to the immigration judge, and we cited 1239.2F, which says, Judge, you could terminate proceedings if there's a pending removal application if she establishes prima facie eligibility for naturalization. However, the judge and government argued that because of an old case, 1975 case, Madera-Cruz, you have to go back to the agency that placed her in removal proceedings and ask for a letter saying that she's eligible for citizenship, which is ridiculous. And that became ridiculous because in 1990 is when INS was given sole and exclusive jurisdiction of the naturalization process. In 1975, when Madera-Cruz was written, the district courts had exclusive jurisdiction to naturalize individuals. However, the INS at that time played an advisory role. So these advisory letters that were in existence in 1975 were completely objective in nature, and they were independent of the proceeding. And what happened in 1990, you have a situation in which that advisory position basically nullified. And now when you go to court and you cite the section, 1239.2F, if you read the section, it specifically says it makes no mention of getting a letter of assent. Now, has the agency reconsidered the validity of Madera-Cruz since the change in the statute? To my knowledge, no. They keep on applying it for the past 16 years, thinking that INS has an objective advisory role to a district court or to a court, and that is just plain wrong. And in this case, this is a prime example of how it could be abused, because she applied for naturalization when she's prima facie eligible. She gets placed in removal proceedings not because of the crime, because it's outside of the five-year period and it's not a mandatory statutory bar. And then she goes to the immigration court and they're saying, go get a letter from the INS. What is our authority, if there is any, for us to reexamine or to require the agency to reexamine the continuing validity of Cruz? You're quite the group here. Your Honor, I believe that the agency has to be told, look, the rules change since 1990. When Madera-Cruz came out in 1975, this was a very honorable function that the INS was serving, advising the district courts. However, since 1990, you've been vested with exclusive jurisdiction, and the rationale of that case is just wrong, outdated, and obsolete. And what we have now is just a regulation that says that an immigration judge may terminate proceedings upon a prima facie showing of naturalization eligibility and the pending application, and if she finds that, she can move forward on a termination hearing based on humanitarian and compelling grounds. So you just don't get off the hook. And in this case, this lady had a claim for that, and unfortunately she could not secure that letter because it was impossible. And they're basically using that same 1975 case. We tried to get the letter, we didn't get a response. There was, it's not part of the record, but there was a letter that was sent months after removal proceedings to this council, basically saying, you know, we're not going to, we don't think that she's worthy of naturalization. But evidently that's pretty much what happened in this case. And we believe that what happens is the immigration judge has the authority under ACFR 1239.2F. It's impossible to think that an immigration judge cannot make a prima facie finding of naturalization eligibility. All she has to do is flip her Code of Federal Regulations and look at ACFR 316.2A to see the prima facie requirements of naturalization eligibility. The government seems to argue that, no, only INS can make prima facie findings. But we're not asking the judge to naturalize the person. Is she prima facie eligible under the current statute? That's the question. Did you make the argument to the board asking it to, in essence, overrule or rescind Madera-Cruz? We did address Madera-Cruz. And the board refused? The board refused. In fact, the board's decision goes into great detail about the fact that these are the rules. Madera-Cruz still stands despite the change and with no significant legal analysis, but they do state that. So assuming that we have to give some kind of Chevron deference to the agency's determination, by what authority could we overturn their refusal to overturn Cruz? I believe, Your Honor, it becomes whether it's a constitutional issue, because they're misapplying or misreading this statute. And the regulation in question is 1392.2F. They missed 1239.2F. You gave me so many numbers I lost it. Let's start over again. 1239.2F. It basically authorizes immigration judges to terminate proceedings upon a prima facie showing. And they're basically stonewalling respondents with this Madera-Cruz case, which predates the change in the naturalization process. The secondary argument that we presented is also a valid argument, based on the fact that when she applied for naturalization, as Justice noted, she was deportable, but she was still eligible for naturalization. And when she applied, she had 1239.2F as a defense if she was placed in removal proceedings, and she also had accumulated more than 10 years of good moral character since the commission of the offense. So she essentially, when she applied for naturalization, she availed herself of the possibility of deportation if the termination hearing under 1239.2F was ever denied. Former 10-year suspension of deportation was repealed on April 1, 1997, a year and a half after she applied for naturalization. And we believe that she had acquired settled expectations of a form of discretionary relief at the time when she applied. You lost me in the logic. At the time she applied before IRERA went into effect, there was a risk that even though she had filed, she could still be deported? If the attorney general did what? If they initiated removal proceedings against her. So that risk existed before IRERA came along? It did exist because of a firearm, the firearm charge. So how can we say, then, that she had a settled expectation that was dashed by IRERA, if the possibility existed before the law went into effect that she could have been deported? And now the law makes clear that it's a certainty that she'll be deported. Is that the difference? There's a difference between relief. IRERA. The question I'm asking under the case law, is there a difference between probability and certainty for purposes of our retroactivity analysis? Before IRERA, she had suspension of deportation as a secondary form of relief from deportation. That's to say she had 212, the possibility of 212C? 212C, she did not have because of the fact that it was a firearm offense. 212C didn't waive firearm offenses, but former suspension of deportation under Section 244A.2 allowed people with firearm offenses who were legal residents to, after ten years, apply for discretionary relief. I see. And so she was eligible for that discretionary relief. She was. And after the passage of IRERA, is she ineligible for any discretionary relief? Unfortunately, she's ineligible for any discretionary relief. However, we presented the retroactivity claim on her settled expectations. However, our primary form of relief was always the fact that she could have moved to terminate proceedings, and she had such compelling factors based on the fact of her, of the nature of her abuse, that we believe that she should have had the right to a hearing. Now, on the retroactivity argument, how do you get around the line of cases that includes, say, Jimenez-Anglos? The line of cases involve non-resident aliens, people who have established no legal status in the United States. All those cases involve people who are illegal aliens, who are into the- Illegal from the get-go. Yes. People who have not acquired a legal status in the United States, who identify themselves with the INS and basically state, I was eligible for discretionary relief for illegal alien. This is a legal resident alien who had been a legal resident since 1973 and was eligible for two forms of relief when she applied for her naturalization application. Two forms of relief being? 1239.2F and also former suspension of deportation under Section 244A2. Thank you. Thank you. You'll have a little bit of time for rebuttal, and we'll hear from the government. May it please the Court, my name is James Grimes for the Attorney General. Before I get into why Cruz is still valid, I'd like to address Judge Fletcher's question. I think it came up with respect to Judge Tallman as well. She was deportable in 1995 for a firearms offense. Herrera also made her deportable for commission of an aggravated felony. So that was still there. And whether or not the fact of her removal hearing would have been the only reason that the agency would have denied her naturalization application is something we don't know. And the reason I can say that is the good moral character determination does not- By statute and regulation, the agency has to look at the whole picture. And so her offenses, although 25 years old, are relevant to that determination. So I don't think we can say that she would be prima facie eligible to naturalize, because it's not as if you just- Well, there's no-put another way, though. In the absence of the removal proceeding itself, there was no absolute statutory bar for naturalization. That's correct. There was no per se bar. That's correct. So the flip side of that is that she might not have been naturalized, but she established that she had the minimum statutory requirements for eligibility. She established that there was no per se bar. But the determination of whether she's prima facie eligible would implicate a sort of weighing of the factors for the good moral character, because she has to establish a good moral character. And that's not something where you just check boxes A, B, and C and say, I've established a good moral character. She did try and kill her husband, and she did fire her weapon at her neighbor's house. So there's definitely going to be a weighing there before the agency can say, yes, you are prima facie eligible. You can naturalize, or no, to make the yay or nay determination. And she has-she did have the opportunity to challenge the denial of her naturalization application. She had the opportunity before the agency. And then she went to district court. And I realize the district courts didn't have jurisdiction, but that decision was wrong under this Court's decision in Belligiaro. So what she could have done was appeal to this court, as the alien in Belligiaro did, because in Belligiaro's case the district court dismisses well. So she could have appealed to this court and challenged the denial of her naturalization application and said, you know, whatever argument she wanted to present. But she didn't do that. And I don't think that the question of whether or not she should have been naturalized is really within the scope of this petition for review. And then I'd also like to focus on really what's before the court as far as exhaustion goes, because the exhaustion issue was raised. I think if you look at page 20 of the record, the argument she made to the board wasn't that there was some sort of abuse of power or miscarriage of justice. It was that the immigration judge should have held a hearing. I don't know that she addressed whether the immigration judge had the authority to hold that hearing, but that's what she exhausted. Now, as to Cruz, I don't think the law has quite changed as much as has been assumed. The law provides at 8 U.S.C. 1227A that aliens who have been convicted of aggravated felonies and have been convicted of firearms offenses, quote, shall be removed. I don't believe there's a similar provision that mandates when aliens shall be naturalized. And, of course, Section 1429 provides that the agency cannot consider a naturalization application for an alien in removal proceedings. But the attorney general still retains discretion whether to begin removal proceedings against a person, even if they meet the statutory definition of a person who is removable. So there remains an element of discretion in all this.  I'm sorry, Your Honor. Yeah, of course there is. I think within with respect to any sort of statute that gives an agency a sort of prosecutorial authority, the agency has to weigh, you know, its resources and choose which cases are the most serious and which ones it should bring. But the statute nonetheless does mandate that an alien in her situation shall be removed. In the last year or so, it has seemed to me that the attorney general has been more willing than previously to entertain the prospect of mediation in cases that are close. Is that an option that you may not have the authority to say one way or the other, but is that an option that would make any sense in this case? Well, I don't think so, Your Honor, and perhaps I can explain that and explain why Cruz sort of ties in with why Cruz is still valid. And the point there, I think, is that the attorney general doesn't have the authority to determine whether or not an alien is prima facie eligible. That authority rests by statute with the secretary of the Department of Homeland Security and is conferred by him by regulation to officers of citizenship and immigration services. So that agency has the authority to make that determination. And the authority is conferred by 8 U.S.C. 1103A. Now, there is a reference at 8 U.S.C. 1424A to the attorney general. I'm not sure that's responsive to Judge Graber's question. You're just making your argument on the merits. Her argument was somewhat different, and that is to say, is there some room for mediation here? And the government is the government as a whole. I mean, to me, your answer seems to me so far to have been, well, we're segmented and the left toe of the government isn't in the same place as the right elbow, but it's all the government. So that's kind of my question. I understand your question. My direct answer would be no, I don't believe so. And I think subsumed in there are sort of two questions. Well, maybe not. Maybe these questions aren't subsumed. But my direct answer is I don't believe so, because there is a valid removal order against Ms. Hernandez. There's no issue that she's removable as an aggravated felon. There's no question about whether or not she's. Well, I'm not sure that's right. We have, I think, a serious retroactivity question. I'm not sure that she cannot take advantage of the prior error law, given the circumstances here. We were just told that this is different from the Hernandez-Angeles line of cases, because unlike the petitioners in those cases, she was a lawful permanent resident alien, indeed statutorily eligible for naturalization in the sense of having fulfilled the statutory criteria. And by contrast, in all those cases, those were flat-out illegal aliens. I believe that goes to your Honor's talking about the suspension of deportation question. Yes. But that wouldn't change. Even if she were eligible for that, that wouldn't change whether or not she actually is removable. But it would definitely change whether she ends up being removed. Well, if she were able to apply for that, yes. That's right. I mean, it's an open question as to whether we would hold that she's eligible to apply to that, depending on the retroactivity decision. Sure, Your Honor. I believe that her case would be controlled by Hernandez-Angeles. Well, I understand that that's what your argument is, but I want to tell you that there's an argument on the other side. Yes, and I understand that, Your Honor. I'd like to address that because I don't think there's a really – I also want to tell you that the availability of the argument on the other side may influence your decision whether you think it would be advisable to mediate. Well, then perhaps I could address this then, Your Honor. Well, I'd like to hear an answer to his question. Well, Hernandez – well, perhaps – I'm not sure which question I should answer first. But the question as to – the ultimate question is I don't think that she could have been eligible for suspension in the first place because an alien who's a criminal alien who's been convicted of a firearms offense has to show 10 years of good moral character following the commission of the offense. Yes, and the offense was in 1981 or thereabouts, and her application for citizenship was some 14 years later, which adds up to more than 10. That's right, Your Honor. But for non-criminals, you count backwards 7 years from the application. But for criminals, you count 10 years forward from the date of the commission of the offense. That's what the statute says. Right, and the offense was in 81, so you count backwards 91. Yes, yes, Your Honor. During those 10 years, she was serving 4 years in prison. And under 8 U.S.C. 1101-F7, any alien who serves more than 180 days in prison during a relevant time period is barred from showing good moral character. So my ultimate point is I don't think she could have even ever relied on suspension of deportation. But my subsidiary point would be even if that were – So when did she finish her prison sentence? Four years. She was sentenced to – she served four years. So when she would have finished that would have been presumably within four years if she got credit for time served of the time she was – It would have been 1985, and 1995 still is 10 years later. So I guess I don't understand your argument factually. You count forward 10 years from the date of the commission of the offense. She has to show good moral character during that 10-year period. During that 10-year period, she was serving four years in prison. I thought the 10 years was counted from the time – So the way you read the statute, she could have waited 40 years and still not be eligible even if she had been a model citizen and become a nun in the meantime. So that's how you read the 10 years of good moral character? That's literally what it says. What it says is you have to show 10 years of physical presence following the commission of the offense and good moral character during the same time period. That's literally what the statute says. If you're reading a statute, it means that any time there's any incarceration, good moral character is impossible to show. If you're over the threshold. So 181 days, and you live here 40 more years as a perfect person, you read the statute to say that doesn't count as 10 years. Your Honor, I would invite you to look at sections. I've looked. I just find that a very unusual reading. Really, it doesn't come up because usually the alien is in proceedings within the 10-year time frame. But that's literally what the statute says. But my subsidiary point would be that. But I take you to, by that comment, I take you to say, in other words, you have no case law for your position. Other than the plain language of the statute. That's correct, Your Honor. Now I'd like to get an answer to Judge Fletcher's question on the retroactivity. Well, I think the case is controlled by Jimenez-Angeles and Vasquez-Zavala because the distinction between whether or not the alien was a lawful permanent resident or not doesn't inform the inquiry. She still couldn't have had, she still didn't change her legal position based upon her decision. Although there's some language in Jimenez-Angeles that says the only thing that she gave up by coming forward was her right to live, quote, illegally and undetected, close quote, in the United States. That's not the situation of this person. Well, I think she says she is in this country legally. She is. But what she gave up was the ability, like Jimenez, to remain undetected or to have her offense not known. In fact, I think she's weaker than Jimenez because Jimenez at least wanted to be placed in deportation proceedings and Ms. Hernandez did not. But if I could return to the primary issue. I guess I don't understand what difference that makes. Well, if you're looking at a sort of reliance issue, what she was hoping to achieve, Ms. Jimenez at least was hoping to be placed in deportation proceedings so she could seek suspension. Mr. Hernandez wasn't trying to do that at all. She was trying to avoid being placed in deportation proceedings because she wanted to naturalize. But if I could get back to the primary point, there is no provision in the Act for termination. The only provision for naturalization. There is a provision in the regulation, but the alien has to show that prima facie eligible. And the only agency that has the ability to make that determination is Citizenship and Immigration Services. The immigration judge doesn't have that authority. And as I talked about for respect to good moral character, you have to look at the whole picture. It's true she's not per se ineligible, but it would be for the agency to determine whether or not she actually meets the requirement to show good moral character. And because the immigration judge and the board don't have that authority, deference to Citizenship and Immigration Services is not only appropriate, it's necessary. So what is the person's avenue of appeal from that determination on lack of good moral character? Well, the determination that they're ineligible to naturalize, Your Honor, they could appeal within the agency and then they can go to district court, as the alien did in Bellagioro. And if they lose in district court, they could appeal here. And so she had that opportunity. She could have appealed the district court's determination that it didn't have jurisdiction. She could have argued, I actually am eligible to naturalize, and the reason it was given is invalid. And this court could have ruled on that. She didn't take advantage of that opportunity. She could have done so. The issue really simply comes down to one of authority. The immigration judge doesn't have that authority, so the board relied on matter of cruise. Now, there has been some discussion about the change in the statute. I'd like to point out that if Citizenship and Immigration Services fails to make a decision within 120 days of the first interview, the alien can go to district court under USC 1447B. So there still is a role for district courts, as there was in cruise. The case for cruise is stronger now because the agency, what was INS, now Citizenship and Immigration Services, is the only agency that has the authority to make that determination. If the immigration judge were to make that determination, that determination would simply be advisory because it wouldn't control. The question that underlies termination in this sense is naturalization eligibility, and that's for CIS, Citizenship and Immigration Services, to determine. And as I said, she had the opportunity to raise that issue before this court if she had appealed the district court's determination. In any event, she didn't receive a communication from the agency. And I'd like to point out, I'd refer the court to page 67 of the record, her counsel relied on cruise before the immigration judge in asking the immigration judge to terminate. So that was her argument then, and then before the board, she simply said the immigration judge should make the determination. So she sort of changed tact to now saying that there's a statutory and regulatory violation.  The only thing she can rely on is the regulation, but as I said, the regulation doesn't define prima facie eligibility, and it doesn't give the immigration judge authority to make that determination. So the board has filled that hole in the regulation in cruise, which is simply a reasonable interpretation of the regulation, and that is why we believe that you should defer to cruise, because it is. The central point of cruise still exists. The board and the immigration judge still have no authority to make the prima facie eligibility determination. Can you tell me how this reference to the non-record material crept in? As I indicated in the footnote to our letter brief, I spoke to counsel who wrote our brief, and I can't say for certain how that happened. I suspect, as the court indicated in its order, that she must have had a copy of the district court's record. So I can only surmise that. I don't know, and as we indicated in our letter brief, it shouldn't have been in the brief. Of course, I'm sorry that we created that issue. It shouldn't have been in there. She did reference it. She shouldn't have. We shouldn't have, so I apologize for that. In any event, we ask that you deny the petition, unless there are any further questions, which concludes our presentation. Thank you, counsel. Thank you. I believe Mr. Arialy has a little bit of time. Yes, Your Honor, I'll be brief. I do have a question, though, and then I'll restore some of your other time. Assuming that cruise remains valid, what remains of your arguments? Where does that leave you? If cruise remains intact? Right, because if cruise remains intact and you have no approval pursuant to cruise, I don't understand how you kind of get out of that box. Well, we presented two issues, Your Honor, the settled expectations on the form of relief that was readily available with former suspension of deportation. That is still a possibility if the court rules, if the court upholds cruise. But, however, the court would have to find that she had settled expectations, which we believe she did, because, as the court noted, it had already been already ten years, not only since the offense, but since she was released from incarceration, at the time that she availed herself to the possibility of deportation by applying for naturalization. Although she availed herself to the possibility of deportation, she was prima facie eligible for naturalization, and she had two forms of relief available. But I wanted to just address some issues that counsel brought up. I represented this lady all the way through, and we went through the N336 hearing, which was basically a facade. We were just given a letter indicating that she was in rule of proceedings, get out of here. So we went to district court. So we go to district court, and what happens in district court? You're in removal proceedings. There's a Supreme Court decision saying that they have unfettered discretion to put her in deportation proceedings. That's the issue we're denying you on. Well, the issue before the court is really not that. The issue before the court is that when she was in removal proceedings, she was denied forms of relief, two forms of relief, the termination under 8 CFR, 1239.2F, and former suspension of deportation based on her settled expectations that she had when she availed herself to the service. Quick question. I think I know the answer to this. Would you be at the moment the government seems to think that it's averse to mediation. Would you be averse to mediation? Absolutely. I would be. No, I wouldn't be averse. I would be receptive to it. I've been waiting for this for six years. I thought I knew the answer. I would be very receptive to it. Okay. Okay. Thank you. Thank you. We appreciate the arguments of both parties. The case just is submitted.
judges: Graber, W. Fletcher, Tallman